UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEZIGN LICENSING, LLC, a New York company<br><br>Plaintiff,<br><br>v.<br><br>BEBE STORES, INC., a California corporation; and ZIGI USA LLC, a Florida limited liability company,<br><br>Defendants. | Case No.: 20-CV-1064 JLS (AGS)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE AND (2) TRANSFERRING CASE TO UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**<br><br>(ECF No. 13) |

Presently before the Court is Defendants Zigi USA LLC ("Zigi") and bebe stores, inc.'s ("bebe") (collectively, "Defendants") Motion to Dismiss or Transfer Under § 1404(a) ("Mot.," ECF No. 13). Plaintiff Jezign Licensing, LLC ("Plaintiff") filed an Opposition to Defendants' Motion ("Opp'n," ECF No. 16), and Defendants filed a Reply in Support of the Motion ("Reply," ECF No. 18). The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 17. Having reviewed the Parties' arguments and the law, the Court finds that transfer under 28 U.S.C. § 1404(a) is appropriate. Accordingly, the Court **GRANTS** Defendants' Motion.

# BACKGROUND

This present action concerns two of Defendants' sneaker models—the Sport Krysten and the Sport Keene. *See generally* ECF No. 1 ("Compl."). Plaintiff designs light-up footwear. *See id.* ¶ 9. Plaintiff holds a design patent on a particular type of light-up shoes, which differs from other light-up shoes in the design and placement of the shoe's illumination system. *Id.* Plaintiff owns a patent covering the design, U.S. Design Patent No. D554,848 (the "'848 patent"). *Id.* ¶ 12.[1]

Plaintiff brought this complaint alleging that Defendants willfully infringed upon Plaintiff's design patent by selling and marketing the Sport Krysten and the Sport Keene. *Id.* ¶ 1. Plaintiff contends that "the ordinary observer would be deceived in believing that the design of [Defendants'] shoes is the design claimed in the patent-in-suit." *Id.* ¶ 15. Plaintiff claims Defendants sell, distribute, and market these infringing shoes. *Id.* ¶ 18.

This is not the Parties' first legal run-in, however. In 2016, Plaintiff filed a patent infringement suit against bebe in the United States District Court for the District of Maryland. Mot. at 2; *see Jezign Licensing, LLC v. Bebe Stores, Inc.*, No. 8:16-cv-01191 (D. Md. Apr. 21, 2016). In the Maryland action, Plaintiff alleged bebe infringed another of Plaintiff's patents, U.S. Patent No. 6,837,590 (the "'590 patent"). Mot. at 2.[2] Zigi assumed responsibility for bebe's defense pursuant to a purchase agreement between Defendants. *Id.* The parties ultimately entered into a settlement agreement (the "Agreement"), whereby Plaintiff agreed to release Defendants from all claims related to the '848 and '590 patents and granted Zigi an exclusive license to use the '848 and '590 patents. *See* ECF No. 15-1 (filed under seal). The Agreement contains two provisions important to the determination of the present Motion. The first is a forum-selection clause, in which the parties agree that any dispute related to the Agreement will be decided in the

---

[1] The '848 patent was issued on November 15, 2004. Compl. ¶ 2.

[2] Plaintiff filed two other complaints in the District of Maryland around this time alleging infringement of the '590 patent—one against Nike, Inc., and another against Sketchers, U.S.A., Inc. Mot. at 2.

federal and state courts of Maryland. *Id.* The second is a termination clause, which provides that the Agreement will terminate if either the '848 patent or the '590 patent are determined to be invalid. *Id.*

In May of 2018, the Patent Trial and Appeal Board ("PTAB") invalidated the '590 patent. Opp'n at 2. Plaintiff contends that this event terminated the Agreement; however, Defendants continued to sell the shoes allegedly covered by the '848 patent after this supposed termination. *Id.* Accordingly, Plaintiff brought this suit seeking damages and to enjoin Defendants from continuing to infringe upon the '848 patent. *See generally* Compl. Defendants in turn filed the instant Motion seeking dismissal of the action or transfer to the District of Maryland under § 1404(a). *See* Mot. at 3.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

A section 1404(a) motion is the proper mechanism to enforce a forum-selection clause when the plaintiff's chosen venue is otherwise proper. *Id.* at 59. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62. "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66.

///

"A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). When the parties have agreed to a valid forum-selection clause, the court must adjust the ordinary section 1404(a) analysis so that (1) no weight is given to the plaintiff's choice of forum, (2) all private interest factors are deemed to weigh entirely in favor of the preselected forum, and (3) the original venue's choice-of-law rules will not carry to the new venue upon transfer. *Atl. Marine*, 571 U.S. at 63–64.

"[I]n order to defeat transfer, [a p]laintiff must show that the forum-selection clause is not valid and enforceable or does not apply to his claims, or that § 1404(a) 'public-interest factors overwhelmingly disfavor a transfer.'" *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1158 (D. Haw. 2018) (quoting *Atl. Marine*, 571 U.S. at 67). The public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (alteration in original). The party resisting the enforcement of a forum-selection clause has the burden of showing that these factors "overwhelmingly disfavor a transfer." *Id.* at 67.

## DISCUSSION

Defendants move to dismiss this action, or in the alternative, transfer it, based on the forum-selection clause contained in the Agreement. Mot. at 2. Defendants contend that the language of the forum-selection clause renders the Southern District of California an improper venue, as this action should have been brought in Maryland. *Id.* at 3. The language of the forum-selection clause, found in Section 9.10 of the Agreement, provides:

> This agreement shall be construed, and the relationship between the Parties determined, in accordance with the laws of Maryland, notwithstanding any choice-of-law principle that might dictate a different governing law. Each Party irrevocably agrees, consents

and submits to jurisdiction and venue in the federal and state courts located within Maryland, with respect to any dispute arising out of or relating in any way to this Agreement.

*Id.* The Agreement also contains a termination clause. *See* ECF No. 15-1. The termination clause, found in Section 5.2, reads: "This Agreement may only be terminated by mutual written agreement of the Parties; provided, however, that this Agreement shall terminate if a final non-appealable judgement is entered holding either patent which make up the Jezign IP to be invalid." *Id.* Plaintiff argues that when the '590 patent was invalidated by the PTAB, the termination clause was triggered. Opp'n at 2. Therefore, Plaintiff contends the Court should apply the general rules for transfer of venue. *Id.* at 2–3 (citing *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 759 (C.D. Cal. 2016)).

Alternatively, Plaintiff argues that, even if the Agreement had not been terminated, bebe lacks standing to enforce the forum-selection clause. Opp'n at 4. The Court addresses these Arguments in turn.

**I.      The Validity of the Forum-Selection Clause**

The Parties dispute whether the Agreement terminated when the PTAB invalidated the '590 patent. The termination clause of the Agreement provides that, should a final judgment be entered that declares *either* patent making up the Jezign IP to be invalid, the Agreement is terminated. Opp'n at 2. "Jezign IP" is defined in the Agreement as the technology described in the '848 and '590 patents. *See* ECF No. 15-1. Indeed, in May 2018, the PTAB issued a final written decision invalidating the '590 patent. *Nike, Inc. v. Jezign Licensing, LLC*, No. IPR2017-00246 (P.T.A.B. May 29, 2018) ("Ex. A," ECF No. 16-1). However, Defendant argues that Plaintiff gave "no notice whatsoever" to the Defendants of the PTAB decision, and Plaintiff continued to conduct itself as though the Agreement was still in effect by accepting royalty payments from Zigi. Reply at 3 (emphasis omitted). The Court agrees with Defendants that the enforceability of the Agreement is "a substantive matter under contention," *id.*, and a decision on the merits of this claim is premature at this stage in the litigation. Therefore, the Court declines to decide

whether the Agreement was terminated or breached. However, even assuming, arguendo, that the Agreement terminated with the PTAB decision, the Court finds that the forum-selection clause survives the termination of the Agreement.

"Dispute resolution provisions presumptively survive the termination of a contract." *Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *9 (N.D. Cal. Sept. 11, 2014). However, this presumption is rebuttable. *Saleemi v. Gosh Enters., Inc.*, 467 F. App'x 744, 744 (9th Cir. 2012) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991); 13 *Corbin on Contracts* § 67.2 (rev. ed. 2003 & Supp. 2011)). Such a rebuttal may be evidenced through "the express and unambiguous words of the contract." *Kelley v. Colonial Penn Life Ins. Co.*, No. CV 20-3348 MWF-E, 2020 WL 6150922, at *4 (C.D. Cal. July 13, 2020). Moreover, "[w]here the language is clear and not absurd, it will be followed." *Id.* at 5 (quoting *Estate of Wemyss*, 49 Cal. App. 3d 53, 59 (1975)). Still, the contract must "explicitly indicate[]" that a forum-selection clause is designed to terminate with the rest of the agreement; otherwise, the "forum selection clause survives termination of the contract." *Zaitzeff v. Peregrine Fin. Grp., Inc.*, No. CV 08-02874 MMM (JWJx), 2008 WL 11408422, at *9 (C.D. Cal. June 23, 2008) (quoting *Claber, S.p.A. v. Lowe's Cos., Inc.*, C 98-4760, 1999 WL 166974, at *3 (N.D. Ill. Mar. 23, 1999)).

Thus, the question is whether the language of the Agreement "expressly indicates" that the forum-selection clause[3] is designed to terminate with the rest of the Agreement. *Zaitzeff*, 2008 WL 11408422, at *9 (quoting *Claber*, 1999 WL 166974, at *3). The Court finds that it does not. Nothing in the Agreement expressly indicates that the Parties intended for the forum-selection clause to terminate with the rest of the Agreement. *See generally* ECF No. 15-1. Without clear language to the contrary, the forum-selection clause survives even if the contract was terminated or breached. *See, e.g.*, *Zaitzeff*, 2008 WL 11408422, at *9 (holding a forum-selection clause survived because nothing in the

---

[3] The Court notes that the forum-selection clause at issue is indeed a dispute resolution provision. *See, e.g.*, *Marcotte*, 2014 WL 4477349, at *9 (recognizing that a forum-selection clause is a dispute resolution provision); *Zaitzeff*, 2008 WL 11408422, at *9 (same).

contract, "express or implied," indicated the parties intended the forum-selection clause to terminate); *VBConversons, LLC v. Buildertrend Solutions, Inc.*, No. 2:17-cv-02266-CAS(JEMx), 2017 WL 2469969, at *3 (C.D. Cal. June 5, 2017) (holding a forum-selection clause survived termination because "nothing in the [contract]" suggested the parties intended for it to terminate); *Tanious v. Landstar Sys., Inc.*, No. CV 19-1067 DSF (SHKx), 2020 WL 3166610, at *5 n.5 (C.D. Cal. June 15, 2020) (finding no evidence the parties intended the forum-selection clause to terminate with the rest of their contract); *see also Kelley*, 2020 WL 6150922, at *4 (finding a forum-selection clause terminated with the rest of the agreement based off the language "[t]his rider . . . *terminates concurrently* with the certificate to which it is attached" (emphasis added)).  Accordingly, this Court finds that the forum-selection clause survives even if the Agreement was terminated.

Therefore, the Court now considers whether the forum-selection clause is valid and enforceable.[4]  In order to show a forum-selection clause is not valid or enforceable, a plaintiff must make a strong showing that:

> (1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or judicial decision, or (3) trial in the contractual forum would be so gravely difficult and inconvenient that [the litigant] will for all practical reasons be deprived of his day in court.

*Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *M/S Breman*, 407 U.S. at 15, 18) (internal quotation marks omitted).[5]

---

[4] Plaintiff's argument is premised on the forum-selection clause terminating with the rest of the Agreement.  In fact, Plaintiff even concedes "that the forum selection clause would be enforceable if the Agreement was still valid."  Opp'n at 3.

[5] The *Sun* court noted that while *Atlantic Marine* stated that a forum-selection clause is valid except for "extraordinary circumstances," courts received little guidance on what constituted extraordinary circumstances.  901 F.3d at 1088.  Therefore, the *Sun* court turned to the Supreme Court's prior decision in *M/S Berman* for guidance.  *Id.*

Plaintiff does not contend fraud or overreaching should invalidate the forum-selection clause. *See generally* Opp'n. Defendants point out both Parties "are sophisticated commercial actors who negotiated the . . . Agreement at arms' length and with full knowledge of all material facts as they existed at the time." Mot. at 5. The Court finds no evidence of fraud or overreaching. *See Peterson v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (holding that a plaintiff must show fraud or coercion led to the clause being included in the contract).

Plaintiff also does not argue enforcement of the forum-selection clause would contravene any public policy. *See generally* Opp'n. In order to show that it would, Plaintiff must "point to a statute or judicial decision that clearly states such a strong policy." *Sun*, 901 F.3d at 1090. Plaintiff has not done so. *See generally* Opp'n.

Finally, Plaintiff does not claim litigating in Maryland would deprive it of its day in court. *See generally* Opp'n. The Supreme Court's decision in *Atlantic Marine* suggests this factor is difficult to satisfy. *See Sun*, 901 F.3d at 1091. "[C]ourts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiff[] no remedies whatsoever." *Id.* at 1092 (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016)). Plaintiff maintains its principal place of business in Maryland. Compl. ¶ 3. Thus, there is no indication it would be monumentally difficult for Plaintiff to litigate this matter there. Nor would Plaintiff be deprived of any remedy, since federal courts in Maryland routinely hear patent cases. *See, e.g.*, *In re CTP Innovations, LLC, Patent Litig.*, No. 14-MD-2581, 2015 WL 317149 (D. Md. Jan. 23, 2015); *C.R. Daniels, Inc. v. Naztec Intern. Grp.*, LLC, No. ELH-11-01624, 2012 WL 1268623 (D. Md. Apr. 13, 2012). In short, the Court finds that Plaintiff has not demonstrated the forum-selection clause is invalid or unenforceable. Accordingly, the Court concludes that the forum-selection clause remains valid and enforceable despite the alleged termination of the Agreement.

///

///

## II. Public Interest Factors

Because the forum-selection clause is valid and enforceable, Plaintiff must show the clause "does not apply to [its] claims, or that § 1404(a) 'public-interest factors overwhelmingly disfavor a transfer.'" *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1158 (D. Haw. 2018) (quoting *Atl. Marine*, 571 U.S. at 67).[6] Generally, courts will transfer a case to the forum designated by the contract unless the plaintiff can show "extraordinary factors unrelated to the convenience of the parties." *Atl. Marine*, 571 U.S. at 52. Since this bar is exceedingly high, "the practical result is that forum selection clauses should control except in unusual cases." *Id.* at 64.

The Court first considers whether the forum-selection clause applies to Plaintiff's claims. The forum-selection clause provides that both Parties submit to jurisdiction and venue in the courts of Maryland "with respect to any dispute *arising out of* or *relating in any way* to this Agreement." Mot. at 3 (emphasis added). The Agreement pertains to the '590 and '848 patents. *See* ECF No. 15-1. The current dispute revolves around the '848 patent. *See* Mot. at 3. Thus, the Court concludes that the forum-selection clause encompasses Plaintiff's claims. *See Sun*, 901 F.3d at 1086 ("[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997))).

Thus, the forum-selection clause will govern unless Plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. *Atlantic Marine* enumerated some factors for courts to consider: "the administrative

---

[6] The Court also notes that where the forum-selection clause points to a state or foreign forum, the proper way to enforce it is through the doctrine of *forum non conveniens*. *Atl. Marine*, 571 U.S. at 60. However, where the forum-selection clause chooses a federal forum, section 1404(a) is the proper mechanism. *Id.* Here, the forum-selection clause points to "the federal and state courts located within Maryland." Mot. at 3. Additionally, this is a patent infringement case. *See id.* at 2. Patent law is a matter of exclusive federal jurisdiction. *See* 28 U.S.C. § 1338(a). Therefore, the only court that could hear this matter is the District of Maryland, a federal forum. Section 1404(a) is thus the proper vehicle here.

difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (alteration in original). Some courts within the Ninth Circuit also consider "the imposition of jury duty on the people of a community that has no relation to the litigation" and "the avoidance of unnecessary problems in conflicts of laws." *Edwards v. C4 Planning Solutions*, No. 3:18-cv-02144-BEN-AGS, 2019 WL 1746573, at *5 (S.D. Cal. Apr. 18, 2019) (quoting *Loya v. Starwood Hotels & Resorts Worldwide*, 583 F.3d 656, 664 (9th Cir. 2009)).[7] The Court considers each factor in turn.

### A.  Court Congestion

Plaintiff does not suggest any administrative difficulties flowing from court congestion exist here. *See generally* Opp'n. The Court is not aware of any, either. Accordingly, the Court finds this factor to be neutral. *See Goldman v. U.S. Transp. & Logistics, LLC*, No. 17-cv-00691-BAS-NLS, 2017 WL 6541250, at *7 (S.D. Cal. Dec. 20, 2017) (holding that the plaintiff had not shown public interest factors favored dismissal, in part because the plaintiff did not demonstrate any administrative difficulties flowing from court congestion); *Tech. Credit*, 307 F. Supp. 3d at 1009 (finding this factor neutral because neither side made any showing on court congestion).

### B.  Local Interest

This factor asks whether "there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tech. Credit*, 307 F. Supp 3d at 1009 (quoting *Bos. Telecomms. Grp.*, 588 F.3d at 1211). Plaintiff alleges, and Defendants do not dispute, that Defendants conduct business in California. *See* Compl. ¶ 7. Courts have recognized that where a defendant intentionally reaches into a forum, there is a localized

---

[7] The factors enumerated by the Court in *Atlantic Marine* are a non-exhaustive list courts *may* consider. *See* 571 U.S. at 62 n.6. Thus, Courts within the Ninth Circuit will occasionally consider additional factors. *See Edwards*, 2019 WL 1746573; *see also Tech. Credit Corp. v. N.J. Christian Acad. Inc.*, 307 F. Supp. 3d 993, 1008–09 (N.D. Cal. 2018) (considering "the costs of resolving a dispute unrelated to a particular forum" as a factor (citing *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009))).

interest in the controversy. *See Edwards*, 2019 WL 1746573, at *5. However, the Court has no information on the record that Defendants "reached" into the Southern District. *See generally* Compl. Even assuming, arguendo, that California has some interest in regulating the conduct of businesses within its borders, courts have found that this "limited interest" is not enough to deny a defendant's motion. *See Tanious*, 2020 WL 3166610, at *6.[8] The Court thus finds this factor does not weigh against transfer.

### C. Familiarity with the Law

Generally speaking, courts do not find that this factor weighs against transfer. *See, e.g., id.* at *6; *Goldman*, 2017 WL 6541250, at *7. Indeed, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine*, 571 U.S. at 67. However, patent law is a matter of exclusive federal jurisdiction. *See* 28 U.S.C. § 1338(a). And federal courts in both Maryland and this District routinely hear patent cases. *See, e.g., Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823 JLS (JLB), 2021 WL 824768 (S.D. Cal. Mar. 4, 2021) (Sammartino, J.); *Orthopedic Hospital v. DJO Global, Inc.*, No. 19-CV-970 JLS (WVG), 2020 WL 7129347 (S.D. Cal. Dec. 4, 2020) (Sammartino, J.); *In re CTP Innovations*, 2015 WL 317149 (patent litigation heard in the District of Maryland); *C.R. Daniels*, 2012 WL 1268623 (same). Thus, there is no reason to believe a District Judge in Maryland would be any less familiar with patent law than this Court. Plaintiff identifies no "'exceptionally arcane features' of [patent] law 'that are likely to defy comprehension by a federal judge sitting in [Maryland].'" *Tanious*, 2020 WL 3166610, at *6 (quoting *Atl. Marine*, 571 U.S. at 68). The Court therefore finds this factor does not weigh against transfer.

### D. Imposition of Jury Duty

Neither side has made any showing that jury duty would be imposed on people having no relation to this litigation. This alone would be enough to render this factor

---

[8] The plaintiff in *Tanious* also raised this argument in its opposition brief. 2020 WL 3166610, at *6. Plaintiff has not done so here. *See generally* Opp'n.

neutral. *See Tech. Credit*, 307 F. Supp. 3d at 1009 (finding this factor neutral where neither side made any showing that jury duty would be imposed on people with no relation to the litigation). The Court also notes that where a party has at least some connection to a contractually selected forum, courts have found this factor does not weigh against transfer. *See Edwards*, 2019 WL 1746573, at *5 ("[Defendant] has at least some connection to Burke County, and thus, the Court rejects [plaintiff's] argument to the contrary."). Here, the Parties previously litigated the infringement of the '590 patent in the District of Maryland. *See* Mot. at 2. Thus, the Court finds that the factor does not weigh against transfer.

### E. Conflicts of Laws

Finally, Plaintiff does not contend there would be any unnecessary problems with conflicts of law. *See generally* Opp'n. Because patent law is a matter of exclusive federal jurisdiction, the same law will be applied whether this action is litigated in the Southern District of California or the District of Maryland. *See* 28 U.S.C. § 1338(a). The Court therefore finds this factor does not weigh against transfer.

In sum, the Court finds that no public interest factors weigh against transfer. Accordingly, Plaintiff has failed to show that these factors "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.

### III.  bebe's Standing

Alternatively, Plaintiff argues that if the forum-selection clause is enforceable, bebe lacks standing to invoke it. Opp'n at 4. Defendants counter that bebe is a third-party beneficiary of the Agreement and is therefore bound by the forum-selection clause. Reply at 4.

As a threshold matter, a non-party can be bound by a forum-selection clause in two ways: "when the non-party is a third-party beneficiary of the contract[,] and [when] the non-party and the conduct at issue are 'closely related' to the parties to the contract with the forum selection clause." *McNally v. Kingdom Tr. Co.*, No. SA CV 20-00830-DOC-MRW, 2020 WL 7786539, at *2 (C.D. Cal. Nov. 13, 2020) (citing *White Knight Yacht LLC*

*v. Certain Lloyd's of London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019)). Additionally, regardless of whether the third party is a plaintiff or a defendant, it can be bound, either as a third-party beneficiary or because of closely related conduct. *See Emp't Solutions Mgmt., Inc. v. Partners Personnel—Cent. Valley, Corp.*, No. 8:17-cv-1044-JLS-JCGX, 2017 WL 7370971, at *4 (C.D. Cal. Nov. 8, 2017); *AMA Multimedia, LLC v. Sagan Ltd.*, 807 Fed. App'x 677, 679 (9th Cir. 2020). Here, the Court finds the forum-selection clause applies to bebe for both reasons.

First, a third party can be bound to a forum-selection clause as a third-party beneficiary where they "knowingly exploit[] the benefits of [an] agreement and receive[] benefits flowing directly from the agreement." *White Knight*, 407 F. Supp. 3d at 947 (quoting *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014)). In *White Knight*, the court found a non-signatory bound by a forum-selection clause because it knowingly sought to exploit the benefits of the contract by tendering a claim under the contract. *Id.* Here, too, bebe has knowingly exploited the benefits of the Agreement by allegedly manufacturing and selling shoes covered by the '590 patent. *See* Compl. ¶ 16. The court in *White Knight* also found the non-signatory benefitted from the contract, as claims were payable to them. 407 F. Supp. 3d at 947. Similarly, bebe has received benefits flowing from the Agreement because, although Plaintiff held the '590 patent, bebe had allegedly contracted to sell the infringing shoes. *See* Compl. ¶ 16. Thus, the Court finds bebe bound by the forum-selection clause as a third-party beneficiary of the Agreement.[9]

---

[9] Plaintiff cites *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014), in support of its argument that bebe is not bound as a third-party beneficiary. Opp'n at 5. However, Plaintiff's reliance on *Nguyen* is misplaced. The main dispute in *Nguyen* revolved around whether the plaintiff was a *primary* party to a Terms of Use agreement. 763 F.3d at 1180. The court briefly addressed whether the plaintiff could be bound as a third-party beneficiary but concluded the plaintiff did not benefit from the agreement between two primary parties. *Id.* at 1179. As mentioned *supra*, bebe benefitted from the Agreement. More importantly, however, Plaintiff quotes *Nguyen* for the assertion that a "third party must show that 'reliance on a contract's choice of law provision in itself constitutes a direct benefit.'" Opp'n at 5 (quoting *Nguyen*, 763 F.3d at 1180). But the full quote from the Ninth Circuit in *Nguyen* is "*we are unable to find any case law* holding that reliance on a contract's choice of law provision in itself constitutes a 'direct benefit.'" 763 F.3d at 1180 (emphasis added). This language undercuts Plaintiff's argument. Accordingly, Plaintiff's arguments are without merit, and the Court finds bebe is bound by the forum-selection clause.

A third party can also be bound by a forum-selection clause where its conduct is closely related to the contract.[10]  "[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to [the] forum selection clause." *McNally*, 2020 WL 7786539, at *2 (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)).  In several situations, courts within the Ninth Circuit have found third parties to be closely related to a contract and thus bound by a forum-selection clause contained therein.  *See Vistage Worldwide v. Knudsen*, No. 19-cv-01351-W (JLB), 2020 WL 71140, at *7 (S.D. Cal. Jan. 7, 2020) (collecting cases).  For example, in *White Knight*, the court found a non-signatory to a contract bound by the contract's forum-selection clause because the party was "part of the larger contractual relationship." 407 F. Supp. 3d at 947 (quoting *Holland Am. Line*, 485 F.3d at 456).  Here, too, bebe is part of a larger contractual relationship.  bebe has sold and marketed the allegedly infringing shoes based on the Agreement. *See* Compl. ¶ 16; Reply at 2.  Thus, the Court finds that bebe is also bound by the forum-selection clause because its conduct is closely related to the Agreement.

## CONCLUSION

For the above reasons, Defendants' Motion for Transfer to the District of Maryland under § 1404(a) (ECF No. 13) is **GRANTED**.  The Clerk of the Court **SHALL TRANSFER** this matter to the United States District Court for the District of Maryland.

**IT IS SO ORDERED.**

Dated: July 19, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[10] Importantly, courts must analyze whether the third party's *conduct* is closely related to the contractual relationship, not whether the party itself is closely related to the contractual relationship.  *See AMA Multimedia*, 807 Fed. App'x at 679.